**UNITED STATES of America,**

v.

**Andrea CAFIERO, Defendant.**

**No. 2002M0434RBC.**

United States District Court,
D. Massachusetts.

June 26, 2002.

Kim West, U.S. Attorney's Office, Boston, MA, for United States.

James W. Lawson, Oteri, Weinberg & Lawson, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S ORAL MOTION TO DISMISS COMPLAINT

COLLINGS, United States Magistrate Judge.

The defendant is charged in the Complaint in the instant case with possession of cocaine in violation of 21 U.S.C. § 844.[1] The Complaint was issued yesterday after Magistrate Judge Alexander, in a nine page opinion,[2] found no probable cause to believe that the defendant possessed cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) as charged in an earlier Complaint which had been filed before her.[3] The same nucleus of facts forms the basis of both Complaints. At his initial appearance before me this date on the 844 Complaint, defendant's counsel orally moved to dismiss the 844 Complaint on the basis of Judge Alexander's ruling. Counsel agreed that the Court could make the determination on the oral motion on the basis of the record before Judge Alexander because, for the purposes of probable cause, the facts are not disputed and the issue is one of law.

The facts as recited in Judge Alexander's opinion are follows:

...[O]n June 5, 2002, the defendant was a passenger on Air Europe flight number 2065 bound from Cancun, Mexico to Rome, Italy. While the aircraft was en route to Italy and traveling in international airspace, the defendant...created a disturbance onboard the aircraft....[T]he defendant was verbally abusive to members of the flight crew and passengers...he physically assaulted a flight attendant and the captain of the airship, and...he attempted to force his way into the cockpit. A group of passengers and members of the crew were able to stop the defendant from entering the cockpit, and eventually physically subdued and restrained the defendant who despite having been forced into submission...continued to threaten to kill the flight attendants and passengers who secured him....[T]he captain requested that physicians on board the flight sedate the defendant....[T]he physicians declined because they had some concern that the

1. For convenience, this Complaint shall be referred to as the "844 Complaint."

2. *United States v. Andrea Cafiero*, 211 F.Supp.2d 328 (D.Mass.2002).

3. The Complaint which formed the basis of proceedings before Judge Alexander will be hereinafter referred to as the "841 Complaint."

defendant might be under the influence of a controlled substance or alcohol.

...[U]pon learning of the incidents aboard Air Europe Flight 2065, federal authorities ordered two United States Air Force "fighter" jets (F–16s) to scramble into the sky and "escort" the plane down [sic] to Logan International Airport ("Logan") in Boston... The plane was brought safely from the skies to Boston.

Upon arriving at Logan, the plane was met by law enforcement personnel, including [FBI] Special Agent Cronin and Massachusetts State Police ("MSP") troopers....[When] the hatch [was] opened, the defendant [was observed being] restrained by belts and tapes....[H]e continued to act in a belligerent manner...and denied any wrongdoing. Special Agent Cronin and/or the troopers...took custody of the defendant and transported him from the plane to the MSP barracks....[No] other law enforcement or customs agency was involved in the custody and transport of the defendant.

...[P]ursuant to a search of the defendant's person while he was being held at the MSP barracks, 184.5 grams of...cocaine was found in his front [sic] pants pocket.

*United States v. Andrea Cafiero,* at pp. 1–4, 211 F.Supp.2d 328, 328–30 (D.Mass. 2002) (footnote omitted).

While it is clear that after hearing Judge Alexander found no probable cause on the 841 Complaint, the Assistant U.S. Attorney and counsel for the defendant have differing interpretations as to the reason or reasons why Judge Alexander found no probable cause. The Assistant U.S. Attorney views the decision as following from Judge Alexander's finding that there was insufficient evidence of the "intent to distribute" element. Counsel for the defendant argues that although the word "jurisdiction" does not appear in the opinion, what Judge Alexander actually ruled was that the Court lacked jurisdiction to prosecute the crime and that this conclusion is quite clear if one "reads between the lines" of the opinion.

As I read the opinion, the reason for the finding of no probable cause was that the defendant had no reason to know that the plane, a non-American carrier, would be diverted to the United States. This becomes important because of the law with respect to proving an "intent to distribute" the cocaine. I do not believe that the holding is that the United States lacks jurisdiction to prosecute passengers carrying contraband on a non-American carrier which is involuntarily diverted from international airspace to the United States. Rather, I see the holding as being that the Government, in order to succeed on a Complaint charging a defendant with possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1), is required to prove that the defendant knew that the airplane on which he was traveling was scheduled to land in the United States and that the Government failed to prove that element.

As Judge Alexander noted, the amount of cocaine found on the defendant's person was sufficient for an inference to be drawn that the possession was with intent to distribute. And as she further acknowledged, if the cocaine is possessed in the United States, there is no necessity for the Government to prove that the defendant intended to distribute the cocaine in the United States; all the Government must prove is that the defendant intended to distribute the cocaine at some location.

What Judge Alexander ruled was that the Government, which had no evidence that the defendant intended to distribute the cocaine in the United States or entered the United States voluntarily, could not, in

those circumstances, use the actual possession of the drugs in the United States to "...suppl[y] the jurisdictional nexus and obviate[ ] the need for proof of intent to distribute within the United States." *United States v. Muench*, 694 F.2d 28, 33 (2nd Cir.1982) (quotation cited by the First Circuit in *United States v. McKenzie*, 818 F.2d 115, 119 (1st Cir.1987)). This seems to be the import of the discussion on pages 332–33 of her Memorandum, particularly footnote 9 (slip opinion).

If this is indeed the sole basis of Judge Alexander's finding of no probable cause on the 841 Complaint, her decision has no bearing on the 844 Complaint since there is no "intent to distribute" element of a charge under § 844. For this reason, I take no position as to whether this ruling with respect to the 841 Complaint was correct. I only rule that the decision does not control the issue of whether, on the record before Judge Alexander, there is probable cause to believe that the defendant committed the offense charged in the 844 Complaint.

In my view, in the circumstances of this case, the Court has jurisdiction to adjudicate the 844 Complaint. The only intent required for a conviction of a violation of § 844 is that the defendant knowingly possessed cocaine. That he did so in the United States is not disputed. The fact that he had no intention to come to the United States is immaterial. In the case of *United States v. Mejia–Lozano*, 829 F.2d 268, 271 (1st Cir.1987), when faced with a challenge to a conviction for importation in violation of 21 U.S.C. § 952, the Court wrote as follows:

> Appellant argues that the government failed to prove that she "knew she would be coming to the United States." [citation omitted] So, she argues she lacked the requisite intent to import. **Passing the obvious question of the knowledge properly inferable to a drug courier who boards an international flight with a regularly scheduled stopover in the United States,** [citation omitted], we find the appellant's premise ill-considered. 21 U.S.C. § 952(a) does not require the sort of specific intent that Mejia–Lozano assumes. **It is sufficient that the defendant knowingly possessed the contraband, and brought it into the jurisdiction of the United States.** See *McKenzie*, 818 F.2d at 118. Nothing in § 952(a) makes the accused's knowledge that she was landing on American soil, or her intent to do so, an element of the offense.
>
> \*     \*     \*     \*     \*     \*
>
> We hold that the offense was complete the moment defendant, knowingly in possession of cocaine, landed in this country with the contraband, **regardless of her knowledge of the aircraft's itinerary or the planned terminus of her journey.**

*Mejia–Lozano*, 829 F.2d at 271–72 (emphasis added). See also *United States v. Ocampo–Guarin*, 968 F.2d 1406, 1411 (1st Cir.1992); *United States v. Franchi–Forlando*, 838 F.2d 585, 586 (1st Cir.1988).

What the First Circuit held with respect to § 952 is equally true of § 844—there is no requirement that the Government prove that the defendant intended to come to the United States or knew that he was coming to the United States. The fact that the plane made an unscheduled stop in the United States does not alter the analysis. Although the incidence of its happening is rare, it is not unheard of that a plane will have to make an emergency landing in a country in which there was never any intention to land. The emergency could be caused by mechanical problems with the plane, or air traffic, or adverse weather conditions. I also am unable to refrain from pointing out that one who causes the type of serious disturbance

on an airplane flying from Mexico to Italy might well have foreseen that his actions would cause the plane to be diverted to the nearest airfield which, considering the route of flight, might be in the United States.

However, the point is that if one knowingly possesses cocaine on an airplane, and that airplane for whatever reason is diverted to the United States, the person possessing the cocaine may be prosecuted in courts of the United States for knowing possession of the contraband in the United States, despite the fact that he never intended to come to the United States and never knew the plane would land in the United States. *Mejia–Lozano,* 829 F.2d at 271–2; *Ocampo–Guarin,* 968 F.2d at 1411; *Franchi–Forlando,* 838 F.2d at 586.

That is not to say that the defendant may not have a successful challenge to the search of his person which revealed the cocaine. This is an entirely separate issue which is not properly raised at the Complaint stage of a criminal case. If the defendant is indicted, a motion to suppress the cocaine could be filed alleging that the cocaine was discovered during the course of an illegal search and seizure.

Two First Circuit cases illustrate the distinction. In the case of *Leiser v. United States,* 234 F.2d 648 (1st Cir.1956), an airplane on its way from Frankfurt to Bermuda by way of Paris and Gander, Newfoundland, was diverted to Boston. Leiser failed to declare certain diamonds to U.S. Customs at Boston and was prosecuted. Although he was acquitted, the diamonds were subject to forfeiture on the grounds that he failed to declare them. The First Circuit rejected his claim that he could only be subject to United States Customs laws if his arrival in the United States was voluntary and intentional with the intent to bring the diamonds into the country. *Leiser,* 234 F.2d at 649. Instead, the Court, analyzing the applicable laws, found that the Leiser was subject to Customs inspection regardless of whether or not he ever intended to enter the United States or knew that the plane would land in the United States. *Leiser,* 234 F.2d at 650.

Another illustration of the distinction is the case of *United States v. Nunes,* 511 F.2d 871 (1st Cir.1975). In that case, the defendant was convicted of importing 375 pounds of marijuana into Puerto Rico. *Id.* at 872. The facts are that a small private plane was traveling from Jamaica to the British Virgin Islands. Upon embarking, there was no intent that the plane would ever enter the United States or its airspace. However, the weather got bad, the pilot ran low on fuel, and then landed in San Juan just to refuel. *Id.* Customs searched the plane and discovered the marijuana. *Id.*

The Court never discussed whether the United States had jurisdiction to try the defendant for the § 952 violation or whether the evidence was insufficient to convict him. Rather, the Court held that since the plane, under the law then in effect, was not subject to Customs inspection, the search and seizure were illegal and a motion to suppress should have been granted. *Id.* at 874.[4]

However, as I indicated, the question of the legality of the search and seizure of the defendant's person is for another day. What I decide today is that the Government may prosecute the defendant for a violation of 21 U.S.C. § 844 even though the defendant never intended to enter the United States nor ever knew that the plane on which he was flying would be diverted to the United States. All the

---

4. The First Circuit has subsequently held that Leiser is "...the controlling circuit precedent, and, insofar as Nunes is distinguishable, limited it to its own special facts." *McKenzie,* 818 F.2d at 119, n. 1.

Government is required to show is that he knowingly possessed cocaine in the United States; the circumstances in which he found himself in the United States are immaterial.